[Civ. No. 58954. Second Dist., Div. Four. Oct. 29, 1980.]

ROBERT A. LUNDGREN et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
LYONEL L. KAHNE et al., Real Parties in Interest.

COUNSEL

William R. Dickerson and George E. Dalton for Petitioners.

No appearance for Respondent.

Barbara Rudick Jacobs and Gerald Goldfarb for Real Parties in Interest.

OPINION

FILES, P. J.—This is a proceeding in mandate to review an order of the Los Angeles Superior Court denying a motion to quash the service of process on Robert A. Lundgren, a certified public accountant (hereinafter R. A. Lundgren) whose residence and professional office are in Oregon, and Lundgren, Sumner & Co., an Oregon professional corporation (hereinafter Lundgren P.C.).

The superior court action arises out of a transaction which closed on March 2, 1979, whereby Photo Factory, Inc., an Oregon corporation, acquired all of the outstanding shares of Parkwood Camera Stores, Inc., a California corporation. In exchange the four shareholders of Parkwood, named Kahne, Krausnick, Gutman and Belden, received shares of the stock of the Oregon corporation.

United Business Investments, Inc. brought an action in Los Angeles Superior Court (No. C 292506) against Parkwood, Photo Factory and the four who had been Parkwood shareholders, to collect money allegedly due for services rendered as a broker in the sale of Parkwood. On October 1, 1979, the four shareholders filed in that action an unverified cross-complaint against a number of parties including United Business Investments, Photo Factory, R. A. Lundgren and Lundgren P.C. The gist of the cross-complaint is that the cross-defendants, acting together, had furnished false information to the cross-complainants, and had thereby wrongfully induced the cross-complainants to enter into the March 2 transaction.

The cross-complaint alleges with some particularity, and by reference to documents attached to the cross-complaint, the allegedly false financial statements attributed to Lundgren P.C. which had reported and certified the financial condition of Photo Factory for the fiscal years ending in 1976, 1977 and 1978.

The Lundgren parties were served by mail addressed to their office in Oregon. The motion to quash was supported by three affidavits of R. A. Lundgren and an affidavit of Sumner. The cross-complainants filed two declarations. After a hearing, the respondent court denied the motion by a minute order.

We turn now to a summary of the declarations and affidavits which were submitted to the trial court.

R. A. Lundgren's affidavits included this: He is a certified public accountant licensed in Oregon, and the sole shareholder of Lundgren, Sumner & Company, a professional corporation. At the times mentioned in the complaint, and until June 30, 1979, James F. Sumner was an officer, shareholder and employee of that corporation. The corporation maintained its offices in Oregon, and did not have an office in California or conduct business in California with California residents.

Photo Factory retained Sumner to advise them with respect to the tax effect of the stock exchange which was contemplated. In "approximately March 1979" Sumner went to Los Angeles representing Photo Factory.

R. A. Lundgren had nothing to do with that transaction or the preparation of the financial statements which are attached to the cross-complaint in this action. Those financial statements were prepared in Oregon for Photo Factory, an Oregon corporation.

The declaration of cross-complainant Kahne included the following: He was one of the shareholders of Parkwood. The deposit receipt agreement between Parkwood and Photo signed January 24, 1979, required Photo to observe taking of the inventory and to "review all contracts." The Lundgren firm was given an office in Parkwood's store to conduct its examination of Parkwood records. James Sumner began his examination there on or about January 28, 1979, and worked almost continuously in Los Angeles to and including March 2. Sumner was present at several of the negotiations between Kahne and Berger (president of Photo).

The declaration of cross-complainant Krausnick included the following: On Sunday, January 28, 1979, Sumner appeared at the Parkwood store in Los Angeles for the stated purpose of examining Parkwood's books and records. During the taking of the inventory, Sumner consulted frequently with Photo employees present for the purpose of observing the inventory. Sumner stated he was present so that he could intelligently advise Photo about the value of Parkwood's inventory. Sumner was present from 10 days to 2 weeks after January 28 and occupied space in the Parkwood office.

The affidavit of James F. Sumner offered in rebuttal included the following: At the times in question Sumner was a certified public accountant licensed in Oregon and an officer and shareholder in Lundgren P.C. He was retained to render accounting services for Photo Factory in Oregon and prepared audited financial statements for the years ending January 31, 1976, 1977, 1978 and 1979. When the 1976, 1977 and 1978 statements were prepared and the opinion letters were issued, he had no knowledge that they would be used in connection with the transaction with Parkwood Camera stores; and the 1979 statement was issued on March 20, after the Parkwood transaction had closed. Photo and its president, Ron Berger, retained his services to advise them with

respect to the tax effects of the Parkwood transaction and to look at Parkwood's books and records. In order to look at these records he traveled to Los Angeles on February 25, 1979, and returned to Oregon on February 28, 1979. At that time an inventory was being taken. He observed a portion of that activity but did not supervise it. He did not participate in negotiations, but was present at the March 2, 1979, meeting at which the final agreement was signed. On that day he flew to California and returned to Oregon the same day.

The principles which we must apply to the factual situation revealed in this evidence are set forth in *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147-148 [127 Cal.Rptr. 352, 545 P.2d 264]:

■ "... The general rule is that the forum state may not exercise jurisdiction over a nonresident unless his relationship to the state is such as to make the exercise of such jurisdiction reasonable. [Citations.]

"If a nonresident defendant's activities may be described as 'extensive or wide-ranging' [citation] or 'substantial...continuous and systematic' [citation], there is a constitutionally sufficient relationship to warrant jurisdiction for all causes of action asserted against him. In such circumstances, it is not necessary that the specific cause of action alleged be connected with the defendant's business relationship to the forum.

■ "If, however, the defendant's activities in the forum are not so pervasive as to justify the exercise of general jurisdiction over him, then jurisdiction depends upon the quality and nature of his activity in the forum in relation to the particular cause of action. In such a situation, the cause of action must arise out of an act done or transaction consummated in the forum, or defendant must perform some other act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. Thus, as the relationship of the defendant with the state seeking to exercise jurisdiction over him grows more tenuous, the scope of jurisdiction also retracts, and fairness is assured by limiting the circumstances under which the plaintiff can compel him to appear and defend. [Fn. omitted.] The crucial inquiry concerns the character of defendant's activity in the forum, whether the cause of action arises out of or has a substantial connection with that activity, and upon the balancing of the convenience of the parties and the interests of the state in assuming jurisdiction. [Citations.]"

■ We first consider the application of these principles to Lundgren, Sumner & Co., a professional corporation, whose activities in this state are not so pervasive as to justify the exercise of jurisdiction over it for all causes of action. We look then to "the quality and nature of [its] activity in the forum in relation to the particular cause of action." It is undisputed that Lundgren P.C. played a significant role in the Photo-Parkwood merger which is the central event in the cause of action. In Oregon, Lundgren P.C. prepared the financial reports which the cross-complaint incorporates as an instrumentality of the alleged fraud. Although Lundgren P.C. disclaims any intent that those reports be used by anyone other than Photo, the validity and the use made of those reports is an issue to be litigated in the California action. Sumner, as an officer of Lundgren P.C., came personally to California to assist Photo in the consummation of the merger. It is not of great importance at this juncture whether he stayed a few days or several weeks. It is undisputed that as an officer of Lundgren P.C., he came to California in the course of his professional duties, there to render an important professional service to his client. In this way Lundgren P.C. "purposefully [availed itself] of the privilege of conducting activities" in California. The services rendered in California, whether carried on over a short period or a longer period, appear to have been an indispensable element in the consummation of the merger which is the subject of the cause of action. The character, quality and nature of Sumner's activity in California are, by any standard, substantial in relation to this cause of action.

The other part of the inquiry—the balancing of the convenience of the parties—requires little discussion. Defendant Lundgren P.C. is situated in an adjacent state. Its erstwhile client, Photo, is or has been doing business in California. So far as appears from the record here, all of the other parties are California residents. The alleged liability of Lundgren P.C. is intertwined with the alleged liability of the other cross-defendants to such an extent that a separate trial for Lundgren P.C. in Oregon would require a duplication of effort by the other parties and by the courts of the two states. California, of course, has an interest in adjudicating the question whether a fraud was perpetrated against California residents in California.

Inasmuch as the activities of Sumner, both in Oregon and in California, are imputed to the corporation of which he was then an officer and employee, the circumstances establish a reasonable basis for assuming jurisdiction over the corporation.

The Lundgren parties have placed emphasis on the fact that the cross-complaint was unverified. In the context of the record here that is immaterial. ■ It is true that a verified pleading may constitute an affidavit competent to prove the facts stated therein and that an unverified pleading has no such evidentiary value. (*Sheard* v. *Superior Court* (1974) 40 Cal.App.3d 207, 212 [114 Cal.Rptr. 743].) But it does not follow that an unverified pleading must be ignored. The existence of the unverified cross-complaint here is a material fact, in that it defines the cause of action, the nature of which has some bearing upon the decision whether it is fair and reasonable to require the nonresident parties to appear and defend in this state. But the pleader has no burden of proving the truth of the allegations constituting the causes of action in order to justify the exercise of jurisdiction over nonresident parties.

The connection between Lundgren P.C. and the California transaction is shown by the evidence presented on the motion to quash. Whether the transaction was fraudulent, and whether Lundgren P.C. is legally responsible for the alleged fraud are not in issue at this stage of the proceedings. The jurisdictional question turns on the quality and extent of its contacts with California, and with the transaction from which the alleged cause of action has arisen.

■ The remaining question is whether California may assume jurisdiction over R. A. Lundgren who, as an individual, has not been shown to have had any connection with Photo Factory or the merger transaction.

The financial statements and the accompanying opinion letters which were prepared in the Oregon office appear to have been signed in the name of the professional corporation, and not in the name of R. A. Lundgren as an individual.[1] R. A. Lundgren's denial of participation

---

[1]Attached to the cross-complaint as exhibits are documents which purport to be the 1976, 1977 and 1978 balance sheets and income statements of Photo Factory, to each of which is attached a letter on the letterhead of "Robert A. Lundgren C.P.A., P.C." stating that the statement presented fairly the financial position of Photo Factory. Each letterhead includes the printed names "Robert A. Lundgren C.P.A." and "James F. Sumner C.P.A." Each letter is signed in handwriting "Robert A. Lundgren C.P.A., P.C."

The affidavit of Sumner acknowledges that those are the financial reports which he prepared. No explanation is given for the corporate name which was then used or the style of the signature on the letters. Giving credence to the uncontradicted portions of the Lundgren and Sumner affidavits, the reasonable inferences are (a) "Robert A. Lundgren C.P.A., P.C." is the corporate name formerly used by the corporation later known as "Lundgren, Sumner & Co." and (b) that the handwritten signature was the signature of the corporation and not of R. A. Lundgren.

stands uncontradicted in this record. Thus, his sole connection with all of this is that he was a shareholder and officer of Lundgren P.C. at the time Sumner was involved as a shareholder, officer and employee of Lundgren P.C. We must look to the corporation law of Oregon to determine the relationship which Oregon law creates between a professional corporation chartered under that law and its shareholders. Specifically we must ascertain whether the acts of one shareholder-officer of an Oregon professional corporation are deemed to be the acts of another shareholder-officer.

The Oregon Professional Corporation Act (Ore. Rev. Stats. ch. 58) defines the powers and duties of such corporations and the relationship between the corporation and its shareholders. The statute does not contain any provision for mutual agency of members such as exists in partnership law. The liabilities of employees and shareholders are defined in section 58.185.[2]

Subdivisions 2(a) and (b) make the shareholder liable for his own misconduct and that of a person under his supervision and that in which he has participated; but these are not applicable here because R. A. Lundgren has not been shown to have participated in or supervised Sumner's activities. Subdivision 2(c) imposing liability for wrongful acts committed by any shareholder, appears to be limited by the closing language "to a person receiving the service." The affidavits in the rec-

---

[2]Section 58.185 provides: "(1) This chapter does not affect the law applicable to the professional relationship and liabilities between a person rendering professional service and a person receiving the service, and it does not affect the standards of professional conduct of a profession.

."(2) A shareholder of a professional corporation may be held: (a) Personally liable for negligent or wrongful acts or misconduct committed by him, or by a person under his direct supervision and control, in rendering professional service on behalf of the corporation to a person receiving the service as if he were rendering service as an individual.

"(b) Personally liable for his own negligent or wrongful acts or misconduct in participation with such acts or misconduct of another shareholder or a director, officer, employe or agent of the corporation.

"(c) Jointly and severally liable with all of the other shareholders of the corporation for the negligent or wrongful acts or misconduct committed by any shareholder, or by a person under the direct supervision and control of any shareholder in the rendering of professional services on behalf of the corporation to a person receiving the service.

"(3) Notwithstanding subsection (2) of this section, the corporation shall be liable for its acts in the same manner and to the same extent as any corporation organized under the Oregon Business Corporation Act. However, the shareholders, directors, officers, employes and agents of the corporation are not personally liable for the debts or other contractual obligations of the corporation, except as provided in subsection (1) of ORS 57.131."

ord here establish without contradiction that the services of Sumner and Lundgren P.C. were rendered solely to Photo Factory and its president, Berger, and not to the persons who are the cross-complainants.

We read section 58.185 against the familiar principle that a business corporation is a legal entity having an existence separate from that of its shareholders, so that shareholders generally are not personally liable for the corporation's wrongful acts solely by virtue of their status as shareholders. Section 58.185 does impose liability upon shareholders under specified circumstances. We interpret that as recognizing the separateness of the corporate entity in other respects, and negating liability upon shareholders for corporate acts not described in that section. We therefore conclude that, under Oregon law, the allegedly wrongful acts of Sumner in his capacity as a shareholder of Lundgren P.C. may not be imputed to the other shareholder, R. A. Lundgren, for the purpose of imposing personal liability upon him.

Since R. A. Lundgren did not personally participate in the transaction which is the subject of the cross-complaint, and since the Oregon Corporation Law does not impute to him any legal responsibility to others than clients for the alleged conduct of Sumner, it follows that R. A. Lundgren cannot be said to have had any "activity" in California and there is no basis for subjecting him to California jurisdiction in the pending action.

Let a writ of mandate issue requiring the respondent court to modify its order of March 12, 1980, to grant the motion of Robert A. Lundgren, an individual, to quash service of summons upon him. In other respects the petition is denied.

Kingsley, J., and Woods, J., concurred.